means satisfied that any wrong manoeuvre was made by the Bucktail, or that she had it in her power to take any course, when it was found that the vessels were directly upon each other, which would have rescued her from the danger that was upon her.

The Argus had no right to pass the bows of the beating vessel, unless she had clearly room enough to do it without driving her into the wind, or to come so closely upon her stern as to alarm her for her safety, and induce her, under such apprehension, to bear away before the wind. There was the full breadth of the river to the Argus, with a free wind, and it was her duty to observe the Bucktail and take such a course as to leave her undisturbed on her tack.

It is clear to my mind, upon the evidence, that this was not done, and the unfeeling neglect on board the Argus after the disaster to stop and aid the crippled vessel or ascertain what might be her danger, although urgently appealed to with the cry that she was sinking, and from the refusal on the part of her officers to give the name of the vessel, is impressive evidence of conviction on board of the Argus that the wrong had been wholly on her side. Moreover, the character of the injury received, as detailed by the ship-carpenters, is very strongly corroborative of the statements of the libellants' witnesses, that the Argus struck the Bucktail stem on, and did not receive the blow obliquely from the Bucktail to the windward of her, and in the act of escaping the contact.

There is no conflict between the parties as to the law applicable to the case. The libellants do not deny that it was the duty of their vessel to hold her course down the river, as uniformly as the circumstances under which she was sailing, combining wind, the tide, the lading and trim of the vessel, and her capacity as a sailer would admit, certainly until coming near the Argus, and having great reason to fear the latter would not take measures to avoid her; and the claimant admits that she was entitled to run out her tack, and that it was the duty of the Argus, while such course was pursued, to take precautions, from her having a free wind, to avoid intercepting or injuring the Bucktail, so maintaining her direction. These views are elucidated, and the principles of law applicable to them are very fully discussed in the books. Story, Bailm. §§ 608, 609, 611; [Hawkins v. Dutchess & O. Steam-Boat Co.,] 2 Wend. 452; Rathbun v. Paine, 19 Wend. 399; 3 Kent, [Comm.] 184; The Celt, [Woodrop-Sims,] 2 Dod. 83; The Chester, [The Celt,] 3 Hagg. Adm. 321; [The Chester,] Id. 316; The Diana, 1 W. Rob. Adm. 131; The Harriett, Id. 182; 7 Lou. 222.

The proof of the established usage and custom in navigating the North river is in consonance with nautical usages at sea, and the rules of law laid down in the authorities above cited. In my judgment, the evidence in this case clearly casts the blame upon the Argus, and imposes upon her the duty of bearing the loss. There was manifestly a want of proper precaution on her part, or of skill and attention in managing her, in her approach upon the Bucktail, and however severe the consequences may be upon the absent owner, the law lays upon him and his vessel the responsibility of repairing the damage which she has occasioned.

I must, accordingly, pronounce for the libellants in this cause, and decree that they recover damages for the injuries they have sustained, which must be a compensation for the actual loss of property. The Dundee, 1 Hagg. Adm. 120.

---

## Case No. 522.

### The ARIADNE.

#### District Court, S. D. New York.

[Cited in The City of Norwich. Case No. 11,-202. Nowhere reported; no opinion on file in clerk's office.]

---

## Case No. 523.

### The ARIADNE.

#### Circuit Court, S. D. New York.  May, 1870.

[Affirming The Ariadne. Case No. 524. Reported as The Ariadne, Id. 525.]

---

## Case No. 524.

### The ARIADNE.

[2 Ben. 472.][1]

District Court, S. D. New York.  June, 1868.[2]

COLLISION OFF BARNEGAT— STEAMER AND BRIG— LIGHTS—SPEED—BURDEN OF PROOF.

1. Where a brig, sailing westward, at night, and keeping her course, was struck on her starboard quarter by a steamer running south by west quarter west, at the rate of about seven or eight knots an hour, the steamer having kept a good lookout, and having, as soon as the brig was seen, no light being visible, stopped and backed her engine, and having, as soon as the course of the brig was seen, put her helm hard a starboard: Held, that, on the evidence, the brig did not have burning such a green light as could be seen at the distance of two miles, and that this fault contributed to the collision.

[Cited in The State of Alabama, 17 Fed. 863; The City of Merida, 24 Fed. 236.]

[See note at end of case.]

2. That the burden was on the libellants, the owners of the brig, to establish that the steamer was in fault.

3. That it was not shown that the steamer could have seen the brig sooner.

[See note at end of case.]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Decree affirmed by the circuit court in The Ariadne. Case No. 525, but afterwards reversed by the supreme court in 13 Wall. (80 U. S.) 475.]